WARREN et al., Appellants, v. THE BARBER ASPHALT
PAVING COMPANY.

Division One, May 8, 1893.

1. **City: EXTENDING LIMITS: STATUTE.** A city of the fourth-class is not prohibited from extending its limits to within two miles of a city of the first-class in the same county by virtue of section 981, of Revised Statutes, 1889, which provides that no city shall be "organized" within two miles of a city of the first-class unless such cities are in different counties.

2. **Statutory Construction, Cardinal Rule of.** The cardinal rule of statutory construction is that the words of the statute are to be taken in their ordinary and familiar signification and import, and regard is to be had to their general and proper use.

3. **City: STREET IMPROVEMENT: ADVERTISEMENT AND LOWEST BIDDER: STATUTE.** Where it is not provided by the city charter, or general ordinance that the board of aldermen shall advertise for proposals or let contracts for street improvement to the lowest bidder, the board may in its discretion omit either or both without rendering the contract void; the statute providing that "when such work shall by the board of aldermen be ordered to be done the same shall be done in the manner and with the materials to be designated in such ordinance." (Revised Statutes, 1889, sec. 1592.)

4. ——: ——: **SIMPLE CONTRACT.** So the board, in the absence of a charter provision restraining it, may in its discretion award the entire contract of improvement, including the wearing surface, in one single contract.

5. ——: ——: **ESTOPPEL.** Objections to the methods provided by the board of aldermen within their discretion cannot be raised after the work is done in the absence of a showing of fraud or collusion.

6. ——: ——: **ORDINANCE, REASONABLENESS OF.** An ordinance providing for advertisement for bids on a paving contract by posting the notices at ten public places within the city for five days is *prima facie*, reasonable and was not overcome by the allegations to the contrary made in the petition in this case.

*Appeal from Jackson Circuit Court.*

AFFIRMED.

*Teasdale & Ingraham* and *C. O. Tichenor* for appellants.

(1) Section 4388*a* Revised Statutes, 1889, prohibits the extension of the limits of Westport to within two miles of a city of the first, second or third class, unless the cities are in different counties. The above statute should be so construed. Sutherland on Statutory Construction, sec. 324; *United States v. Babbit,* 1 Black 61; *Inhabitants v. Commissioners,* 83 Mo. 346; *Young v. Boardman,* 97 Mo. 187; *Small v. Small,* 129 Pa. St. 372; *Sams v. Sams,* 85 Ky. 400; *People v. Blackwelder,* 21 App. Ct. (Ill.) 257; *State ex rel. v Dueling,* 66 Mo. 379; *Sullivan v. Oregon, etc.,* 24 Pac. Rep. 408; *Myer v. Car Co.* 102 U. S. 11; *City v. Lane,* 19 S. W. Rep. 533; *Kane v. Railroad,* 20 S. W. Rep. 532. When territory is annexed to a city it comes into municipal existence as effectually as if it was a part of the territory incorporated in the first instance. (2) The contract was void because not drawn in a manner to admit competition. Bishop on Contracts, sec. 523; *Atcheson v. Mallin,* 43 N. Y. 147; *Hooker v. Allen,* 5 Denio, 434; *Gulick v. Ward,* 5 Halst. 87; *Gardiner v. Morse,* 25 Me. 140; *Woodruff v. Berry,* 40 Ark. 251. (3) The ordinance was unreasonable in the matter of the notice. (4) *Quo warranto* is not necessary. *Hambleton v. Town,* 89 Mo. 191; *City v. Railroad,* 79 Mo. 98; High. on Extraordinary Remedies, sec. 618.

*W. C. Scarritt, Pratt, Ferry & Hagerman,* and *W. A. Alderson* for respondent.

(1) It is no defense that the property charged by the tax bills and the boulevard paved were within certain portions of Westport taken by the extension of 1891. Extension is not the same as organization. The

words of a statute should not be departed from when they can be read in their ordinary sense. Revised Statutes, 1889, sec. 6570; Sedgwick on Statutory Construction [2 Ed.] 191; *Edrich's case*, 5 Coke, 118; *Fisher v. Blight*, 2 Cranch 358; *Risely v. Mattingby*, 14 B., Mon. 89; *Weller v. Harris*, 20 Wend. 566. (2) Even if extension is organization, its legality cannot be questioned in a suit between individuals. That question can be raised in a *quo warranto* proceeding by the state. 1 Dillon on Municipal Corporations [4 Ed.] sec. 43*a*; *Kayser v. Bremen*, 16 Mo. 88; *St. Louis v. Shields*, 62 Mo. 247; *Fredericktown v. Fox*, 84 Mo. 59. (3) There is nothing in the alleged defense that the work as advertised created a monopoly. If the statute required advertisements for the lowest bidder, which it does not (Revised Statutes, 1889, sec. 1592) the fact that defendant was the only one who could bid on the work is no defense. *Yarnold v. Lawrence*, 15 Kan. 126. *In re Dugro*, 50 N. Y. 513; *Hobart v. Detroit*, 17 Mich. 246; *Memphis v. Waterworks*, 5 Heisk. 495. (4) The ordinance for publication was not unreasonable and Sunday was not counted. *Morse v. Westport*, 110 Mo. 502. Sunday as an intervening day may properly be counted. *Patchen v. Bonsack*, 52 Mo. 431; *State v. Green*, 66 Mo. 631; Ringgold on Law of Sunday, 169. (5) Equity ought not to entertain the petition because of the delay until after the benefit of the work has been received. *Gibson v. Owens*, 21 S. W. Rep. 1107; *Johnson v. Duer*, 21 S. W. Rep. 800.

MACFARLANE, J.—This is a suit in equity for the cancellation of certain tax bills charged against the property of plaintiffs and issued to the defendant corporation for paving Warwick boulevard under an ordinance of the city of Westport, approved October 13, 1891. A demurrer to the petition was sustained, and plaintiffs appealed.

The petition charged the invalidity of these tax bills upon three grounds, which are insisted upon in this appeal. *First.* That the property of plaintiffs, which defendant claimed was charged with the lien of these bills, was within certain territory taken into the city of Westport by an attempted extension of its limits in May, 1891, which was unauthorized, illegal and void. *Second.* That the ordinance for paving the street was so drawn as to cut off all competition in bidding on the work, and to give the defendant the sole right to secure the contract. *Third.* That the ordinance providing for the advertisement for bids was unreasonable and void for the reason that it only required the posting of "ten written or printed notices at ten public places within the city of Westport for five days." These objections will be considered in their order.

From the allegations of the petition, which are admitted by the demurrer to be true, it appears that by proper proceedings the city of Westport, in Jackson county, became a city of the fourth class June 4, 1881. By an ordinance approved April 14, 1891, and an election held thereunder May 11, 1891, the corporate limits of said city were extended north so as to take in plaintiffs' lots, provided the authority to extend the limits in that direction existed; that at the time this attempted extension was made, Kansas City, also in Jackson county, was a city having a population of over one hundred thousand inhabitants, and that the north line of Westport, as extended, was adjacent to and within less than two miles of the south boundary of Kansas City.

I. Section 1580, concerning cities of the fourth class, provides that "the mayor and board of aldermen of such city, whether the same shall have been incorporated before becoming a city of the fourth class or

not, with the consent of a majority of the legal voters of such city voting at an election therefor, shall have power to extend the corporate limits thereof over any territory lying adjacent thereto, or may by the same vote reduce the territory of such city to exclude land used for farming purposes.''

An act of the general assembly approved April 2, 1883 (now section 981, Revised Statutes, 1889), provides that: ''No city, town or village shall be organized within this state under and by virtue of any law thereof adjacent to or within two miles of the limits of any city of the first, second or third class, or a city having a population sufficient to become a city of the first, second or third class, unless such city, town or village be in a different county from such city.''

It is contended by plaintiffs that the true intent and purpose of said section 981 is to reserve the territory contiguous to cities of the first, second and third classes for the purpose of permitting their future growth, development and expansion, and that therefore any act, whether of organization or extension, that would permit an encroachment of any other municipality upon such territory would be violative of its true spirit and intent. It is accordingly insisted that the section should be construed to operate as a limitation on their power to extend their corporate limits, granted cities of the fourth class under said section 1580.

The construction contended for would require the word ''organized,'' as used in the statute to mean, or to include in its meaning, ''extend the corporate limits,'' and plaintiffs insist that the word as used requires that interpretation in order to effectuate the manifest purpose of the law.

Plaintiffs in support of their position have brought to our notice many rules adopted by the courts for

determining the legal import of words, terms and sentences when their meaning is doubtful or ambiguous. The sum and object of all rules of statutory construction is to determine what was the general purpose sought to be accomplished by the law. If the statute is expressed in clear and unambiguous language, and if, when all its parts are taken together, it declares a rule of action which in itself is not unreasonable or unjust, we know of no rule of construction which would permit a questionable interpretation, in order to enforce what we may regard as a wiser public policy. The simple, cardinal rule of construction is that "the words of a statute are to be taken in their ordinary and familiar signification and import, and regard is to be had to their general and proper use." Potter's Dwarris on Statutes, 193; Revised Statutes, 1889, sec. 6570.

Organize means to "form with suitable organs." Webster's Dictionary. The word in some of its forms is frequently used in the constitution and laws of the state. The general assembly is required to "provide by general laws for the organization, etc., of cities." Constitution, sec. 7, art. 9. The general assembly may provide "by general law for township organization under which any county may organize." Constitution, sec. 8, art. 9; see also section 2, article 8, Constitution of Missouri, and *Railroad 'v. Shambaugh,* 106 Mo., on pages 567–8. The word as used in the constitution or common parlance has no doubtful or ambiguous meaning. To organize a certain territory into a municipal corporation is a very different thing from that of extending the limits of an organized city over new territory.

If it were entirely clear that the legislative intent was to prevent the existence of territory under munic-

ipal organization within two miles of a city of the first, second or third class, then we might feel called upon to cast about for a rule of interpretation under which to enforce that intent.

It seems to us more in accord with reason and justice that the legislature should have intended to give existing cities an equal chance for development and expansion, though one may have contained a greater population than the other. Why a city of two thousand nine hundred inhabitants should not be given the same right to grow and expand as one of three thousand inhabitants is not satisfactorily explained by the fact that the latter is or has the right to become a city of the third class.

We think the obvious purpose of the legislature was to prevent the organization of new towns "adjacent to or within two miles of the limits" of the cities of the classes named, but that no limitation on the powers of existing cities of the fourth class to extend their limits was intended. We hold therefore, that the property taxed was within the limits of the city of Westport.

II. The ordinance for paving Warwick Boulevard provided as follows: "The wearing surface to be asphalt two inches thick, the cementive matter of which is a peculiar cement prepared from the best quality of Trinidad asphalt obtained from the so-called Pitch or Asphalt lake in the island of Trinidad." It is charged that defendant has, from the owner, the sole right to use the asphalt taken from said lake, but that others have the right to take asphalt, equally as good, from other portions of said island, and that the ordinance, as drawn, cut off all competition in bidding on the work, and gave defendant the sole right to secure the contract, and for that reason was void. Analagous questions in regard to the right of a city to avail itself

of patented inventions in the improvements of its streets, where the charters required that all contracts should be let to the lowest bidder, have been before the courts of several states, and the rulings have not been uniform. The better reason, it appears to us, would permit the right, though Judge Dillon seems to think the tendency of the courts the other way. 1 Dillon's Municipal Corporations, sec. 467. The note to this section gives the cases on both sides.

We do not think it necessary, however, to decide the point in this case. The board of alderman are not required under the general laws governing cities of the fourth class, nor any general ordinance of the city, so far as appears, to advertise for proposals, or let contracts to the lowest bidder. The law provides that "when such work shall, by the board of alderman, be ordered to be done, the same shall be done in the manner and with the materials to be designated in such ordinance." (Sec. 1592.) While the best and most economical business management may require the advertisement for proposals, and the letting of the contract to the lowest and best bidder, yet the board may in the broad discretion given it, omit either or both without rendering the contract void. *Yarnold v. Lawrence*, 15 Kan. 126.

III. The petition charged that the ordinance provided for improvements in addition to the asphalt wearing surface as follows: "All necessary material shall be removed from the street; soft and springy places not affording a firm foundation shall be dug out and refilled with good earth, well rammed; and the entire road-bed thoroughly rolled with a steam roller, the base to be hydraulic cement, concrete four inches thick," and that the whole contract was awarded as of one single improvement, which also gave to defendant a monopoly.

The work was really only one improvement, viz.; paving the street. The asphalt was only one part of the pavement, the wearing surface. The board of aldermen may have thought that the work could be done cheaper and in a more satisfactory manner as a single improvement, by one contractor, than by dividing it up into parcels, and awarding it to different persons. No charter prohibition being charged, we must assume that the board acted within its discretionary powers in awarding the contract. *Gibson v. Owens* ante p. 258, and cases cited; *State v. Council*, 30 N. J. L. 365; *Williams v. Mayor*, 2 Mich. 560.

In the performance of duties in which discretion is lodged with the governing authorities of a city, we think objections to the methods adopted by them, which are within such discretion, should be made before the work is done, unless fraud or collusion is shown. It would be unjust to a contractor who has completed an improvement in full compliance with a contract awarded him by the board of aldermen, which is within the general powers conferred upon it, to refuse payment for the simple reason that the courts may conclude that the means or methods adopted by the board were not the best or cheapest. If contracts could be vacated for such reasons, all security to contractors would be destroyed and the cost of improvements necessarily increased in order to insure against such contingencies. *Sheehan v. Owen*, 82 Mo. 464; *Ross v. Stackhouse*, 114 Ind. 200; *Cole v. Skrainka*, 105 Mo. 309; *Gibson v. Owens ante* p. 258; *Morse v. Westport*, 110 Mo. 502; *Johnson v. Duer, ante* p. 366.

IV. It is insisted that the ordinance under which the contract was let only providing for five days public notice thereof, was wholly unreasonable, and the contract let thereunder was void.

The question of the unreasonableness of this ordinance in other particulars, was fully considered by this court in *banc* in the recent case of *Morse v. Westport*, 110 Mo. 202. It was there held that the *prima facie* case made by the passage of the ordinance in favor of its validity, was not overcome by any allegations of fact tending to show its unreasonableness. We let the reasoning in that opinion stand for an answer to the objections made in this case, and hold that the notice required by the ordinance was not shown by any allegation in the petition to be unreasonable.

Finding no error, the judgment is affirmed. All concur, except BARCLAY, J., who is absent.