[Crim. No. 953. Second Appellate District, Division Two.—May 8,
1923.]

## THE PEOPLE, Respondent, v. ROSCOE THURMAN, Appellant.

[1] CRIMINAL SYNDICALISM ACT—ASSISTING IN ORGANIZING I. W. W.
—IMPLIED FINDING—EVIDENCE.—In this prosecution under sub-
division 4 of section 2 of the Criminal Syndicalism Act of 1919
(Stats. 1919, p. 281), the evidence, showing that the defendant
published and distributed certain printed documents copies of
which were set forth in the information, was wholly insufficient
to support the implied finding of the jury that the defendant
assisted in organizing the Industrial Workers of the World
or any local thereof.

APPEAL from a judgment of the Superior Court of
Imperial County. M. W. Conkling, Judge. Reversed.

The facts are stated in the opinion of the court.

R. W. Henderson for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

FINLAYSON, P. J.—Defendant was found guilty of criminal syndicalism under subdivision 4 of section 2 of the Criminal Syndicalism Act of 1919 (Stats. 1919, p. 281), and now appeals from the judgment of conviction. His sole point is that the evidence is insufficient to justify the verdict.

Subdivision 4 of section 2 of the Criminal Syndicalism Act provides that a person is guilty of the crime denounced thereby if he "organizes or assists in organizing, or is or knowingly becomes a member of, any organization, society, group or assemblage of persons organized or assembled to advocate, teach or aid and abet criminal syndicalism"; and by section 1 criminal syndicalism is defined as "any doctrine or precept advocating, teaching or aiding and abetting the commission of crime, sabotage (which word is hereby defined as meaning willful and malicious physical damage or injury to physical property), or unlawful acts of force and violence or unlawful methods of terrorism as a means of accomplishing a change in industrial ownership or control, or effecting any political change."

The information charges that on May 30, 1921, in the county of Imperial, defendant assisted in organizing and became a member of an organization, group, and assemblage of persons known as the Industrial Workers of the World, sometimes known as the "I. W. W.," which, it is alleged, was organized for the purpose of advocating, teaching, aiding, abetting, committing and attempting to commit criminal syndicalism, sabotage, violence, and unlawful methods of terrorism as a means of accomplishing a change in industrial ownership and effecting political changes.

The information, which, as drafted, is an exceedingly inartificial pleading, contains allegations which at first blush might lead to the supposition that the district attorney intended also to charge defendant with a violation of subdivision 3 of section 2 of the act; for it is alleged that defendant printed, published, edited, circulated, and publicly displayed certain documents (copies of which are set forth in the information) containing and carrying written and printed advocacy, teaching and aid and abetment of crimi-

nal syndicalism. But in this connection the information also charges that these documents were so printed, published, edited, circulated, and publicly displayed "in order to organize and assist in organizing and inducing persons to become members of said organization"—the Industrial Workers of the World.

If the district attorney did intend to charge defendant with the violation not only of subdivision 4 but also of subdivision 3, his attempt at such double charge was so abortive that the learned judge of the trial court very properly, as we think, took from the jury any consideration of the charge of violating subdivision 3 by instructing them that "the offense with which the defendant is charged is, omitting those matters which in the opinion of the court are immaterial or not well stated, that the defendant did willfully and unlawfully *assist in organizing* [italics ours] a society, organization or group of persons known as the Industrial Workers of the World, by circulating and distributing certain literature set out in the information."

Though defendant was charged with having become a member of the organization known as the Industrial Workers of the World, there was no evidence that he became a member in Imperial County—the county in which he was tried and in which the crime is alleged to have been committed—or that he became a member within three years prior to the filing of the information. The court therefore instructed the jury that there "is no evidence that the defendant became a member of said organization in this county, or within three years prior to the filing of the information, and that particular element of the charge as contained in the information therefore fails."

The net result of the foregoing is this: The information adequately charges defendant with two and only two separate and distinct criminal acts, namely: (1) the act of becoming a member of an organization or society organized to advocate and teach "criminal syndicalism," as those words are defined in section 1 of the statute; and (2) the act of assisting in organizing such organization or society. Each of these acts is a crime under subdivision 4 of section 2 of the statute. Because there was a failure to prove that defendant became a member of the organization as charged in the information, that part of the charge was withdrawn

from the jury. Therefore, the only crime of which defendant was convicted is that of *assisting* in organizing an organization or society, known as the Industrial Workers of the World, organized to advocate and teach "criminal syndicalism."

[1] The sole questions presented by this appeal are therefore these: (1) Is there evidence to support the implied finding that the defendant *assisted* in organizing the Industrial Workers of the World? (2) Did the prosecution adduce sufficient evidence to support the impiled finding that the Industrial Workers of the World is an organization or society organized to advocate, teach, or aid and abet any doctrine or precept advocating, teaching, or aiding and abetting the commission of crime, sabotage, or unlawful acts of force and violence or unlawful methods of terrorism, as a means of accomplishing a change in industrial ownership or control, or effecting a political change? It will not be necessary to consider the second question, for we are satisfied that the evidence is wholly insufficient to show that the defendant assisted in organizing the Industrial Workers of the World or any local branch thereof.

The only evidence to which our attention has been called which was relied upon by the prosecution to prove that appellant assisted in organizing the Industrial Workers of the World or any local thereof is testimony to the effect that he published and distributed the printed documents copies of which are set forth in the information. This literature was of the nature of propaganda, and doubtless was published and distributed for the purpose of inducing its readers to join the Industrial Workers of the World. There is nothing to show that any reader was induced thereby to become a member or to apply for membership. Indeed, there is nothing to show that the propaganda was read by anyone other than the town marshal of Brawley. Had the information, or a separate count thereof, properly charged defendant with a violation of subdivision 3 of section 2 of the act it is possible that proof, beyond a reasonable doubt, that defendant did so publish and distribute this printed propaganda would alone have sufficed to justify a conviction. But, as we have seen, if an attempt was made to charge defendant with violating subdivision 3, the district attorney's effort in that direction so far miscarried that the learned

trial judge was prompted to advise the jury that defendant was charged with assisting in organizing the Industrial Workers of the World by circulating and distributing the literature set out in the information—thus in effect taking from the jury the right to consider whether subdivision 3 of section 2 of the act had been violated. The defendant, therefore, was improperly convicted if the evidence fails to sustain the only charge which the court submitted to the consideration of the jury, namely, the charge that defendant "assisted in organizing" a society, group or assemblage of persons alleged to be within the purview of the condemnatory provisions of the statute.

Respondent's contention that the evidence is sufficient to sustain the charge that appellant assisted in organizing the Industrial Workers of the World raises the question of the proper interpretation of the words "assists in organizing," as those words are used in subdivision 4 of section 2 of the act. The word "organize," as used in common parlance, has no doubtful or ambiguous meaning. (*Warren* v. *Barber Asphalt Pav. Co.,* 115 Mo. 572 [22 S. W. 490].) To organize means "to form with suitable organs." (Webster; 21 Am. & Eng. Ency. of Law, 2d ed., p. 1008.) An organ is defined to be "an instrument or medium by which an action is performed or an object accomplished." (*Commonwealth* v. *Wm. Mann Co.,* 150 Pa. St. 64 [24 Atl. 601].) An entity, an assemblage of persons, for example, is "organized" when it is furnished with organs—when it is "endowed with capacity for the functions of life" (Webster)— "qualified for the exercise of its appropriate functions." (*Commonwealth* v. *Wm. Mann Co., supra.*) "The very term 'organization' implies a recognition of order, and an obedience to duly constituted authority." (*In re Redmond,* 5 Misc. Rep. 374 [25 N. Y. Supp. 384].) " 'Organization' is defined as 'an arrangement of parties' (*sic*) ; 'the act of organizing,' as 'the organization of a government, or of flocks, or of a railroad or other corporation'; 'the connection of parts in and for a whole, so that each part is, at once, end and means.' " (*In re Sanders,* 53 Kan. 191 [23 L. R. A. 603, 36 Pac. 348].) To organize is a very different thing from extending the limits of the organization or adding to or increasing its size. "To organize a certain territory into a municipal corporation," says the court in

*Warren* v. *Barber Asphalt Pav. Co., supra,* "is a very different thing from that of extending the limits of an organized city over new territory."

The words "assist" and "aid" are synonymous, and each imports a contribution of effort supplementing the efforts of another. (*State* v. *Flynn,* 76 N. J. L. 473 [72 Atl. 296]; *State* v. *Tally,* 102 Ala. 25 [15 South. 722]; *People* v. *Bond,* 13 Cal. App. 185 [109 Pac. 150].) There is a wide difference between *assisting* in the commission of an act and *attempting* to commit the act. "An attempt to commit a crime is an endeavor to accomplish it, carried beyond mere preparation, but falling short of the execution of the ultimate purpose in any part of it." (Bouvier.) In the absence of such a permissive statutory provision as that which is contained in section 663 of our Penal Code, it has been held that where a defendant is charged with an *attempt* to commit a crime he cannot be convicted if the evidence shows that he actually consummated the crime. (*Graham* v. *People,* 181 Ill. 477 [47 L. R. A. 731, 55 N. E. 179].) While the word "attempt" implies that the accused fell short of a consummation of his purpose to commit the crime, the word "assist," on the other hand, as ordinarily used, imports a contribution of effort by the accused in the complete accomplishment of the ultimate purpose intended to be effected by him and by those whose efforts his work supplemented. It was said in *Hurst* v. *State,* 79 Ala. 55, that "the clause 'assists such prisoner to escape,' in its ordinary import, means that the prisoner does effect his escape, and that he has assistance in accomplishing it." So here, the words "assists in organizing," in their ordinary import, imply that organization has been effected and that the accused assisted in accomplishing it. The statute does not say that it shall be an offense to assist in *attempting* to organize the kind of organizations, societies and assemblages denounced by the act, but that it shall be a crime to assist in *organizing* such proscribed organizations, societies or assemblages.

The evidence before us, if tested by the foregoing definitions, must be held to be insufficient to support the implied finding that appellant assisted in organizing the Industrial Workers of the World or any local thereof. Even if the publication and distribution of the printed propaganda had resulted in adding one or more members, such increment of

membership would not have amounted to "organizing" the Industrial Workers of the World. Such increase of membership would not alone have sufficed to furnish the body of men known as the Industrial Workers of the World with organs—a president, secretary, treasurer, etc.—whereby it would be endowed with the capacity to function—particularly if it were already endowed with such functioning organ or media through which its purposes might be accomplished and its acts performed. But there is no evidence that the printed propaganda resulted in adding a single recruit to the cause for which appellant labored. Therefore, even if it were conceded that to succeed in inducing another actually to join the Industrial Workers of the World would alone be tantamount to "organizing" such an assemblage of men as the statute proscribes, still the mere distribution by an accused of literature or printed propaganda designed to induce others to join the organization but which failed of its purpose, unaccompanied by any organizing efforts on the part of others, would not rise to the dignity of *assisting* in organizing the Industrial Workers of the World or any local thereof. It might possibly amount to an *attempt* to organize; but one who merely publishes or distributes propaganda, there being no showing that his efforts have supplemented the organizing labors of others, does not thereby assist in actually effecting the organization of a body of men.

The judgment is reversed.

Works, J., and Craig, J., concurred.