[Crim. No. 722.  Third Appellate District.—March 21, 1924.]

## THE PEOPLE, Respondent, v. FRANK COX et al., Appellants.

[1] CRIMINAL SYNDICALISM ACT — CONSTITUTIONAL GOVERNMENT — POWER OF CHANGE—PROCEDURE—A constitutional government contains within itself the method, manner, and the power of constitutional change and that change is always subject to the will, wish, and prerogative of the majority of the people exercising the right of suffrage in a legal and constitutional manner; and so long as these methods of procedure are open and may be advocated by anyone, it cannot with consistency be urged that the right of the press or of free speech is either curtailed or abridged by a legislative act which limits the exercise of the effort to make such changes as may be desired by peaceable means.

[2] ID.—FREE SPEECH—DESTRUCTION OF PROPERTY.—Free speech and license are not convertible terms; and, while one may freely state his reasons why a change in government is desirable, he has no license by reason thereof to advocate the destruction of or to take steps to incite others to destroy the property or imperil the lives of those who do not agree to such changes.

[3] ID.—VOLUNTARY MEMBERSHIP—KNOWLEDGE.—Subdivision 4 of section 2 of the Criminal Syndicalism Act has the same meaning as though the word "knowingly" were contained therein; and while that subdivision does not mean that anyone who was elected an honorary member without his knowledge or consent of any organization or assemblage to advocate or teach criminal syndicalism would be amenable to the penalties prescribed in the act, it does apply to one who voluntarily and by action on his part has become and is a member of such an organization.

[4] ID.—CREDIBILITY OF WITNESS—PRIOR MENTAL AFFLICTION.—In a prosecution under subdivision 4 of section 2 of the Criminal Syn-

---

1. Validity of legislation directed against social or industrial propaganda deemed to be of a dangerous tendency, notes, 1 A. L. R. 336; 20 A. L. R. 1543.

dicalism Act, it is error to deny the defendants the right to examine a witness for the people as to whether said witness had or had not spent some period of his life in an institution for the care of the mentally afflicted; but such error will not be held prejudicial to defendants where said witness was allowed to and did state sufficient to show himself to have been one of the most reprehensible characters thinkable.

[5] ID.—MEMBERSHIP IN PROSCRIBED SOCIETY—ORGANIZATION.—In such a prosecution, if membership is established and the criminal character of the organization shown, it becomes immaterial whether the testimony is or is not sufficient to show that the defendants organized or assisted in organizing a society having for its purpose the promulgation of teaching the acts proscribed by the statute.

[6] ID. — TESTIMONY ADMISSIBLE FOR LIMITED PURPOSE — WAIVER OF OBJECTIONS.—In such a prosecution, where evidence which is competent only for a particular purpose is admitted generally, and counsel for defendant fails to ask the court to limit the evidence to the purpose for which it is competent, or to ask a charge to the jury to that effect, defendant cannot afterward complain that the testimony was inadmissible for some other purpose.

[7] ID.—STUB-BOOKS AND MEMORANDA—CHARACTER OF ASSEMBLAGE—MEMBERSHIP.—In a prosecution for a violation of subdivision 4 of section 2 of the Criminal Syndicalism Act, stub-books and other memoranda purporting to be a record of the receipt and expenditure of money, which were taken from one of the rooms of the building used as a meeting place of the I. W. W.'s in connection with a raid on a meeting at which the defendants were present, are admissible for the purpose of showing the assemblage that was using the premises in question and the kind and character of business that was being transacted; but where such exhibits are not properly authenticated, they are not admissible for the purpose of proving membership in said assemblage or that defendants were doing anything wrong.

[8] ID.—PROOF OF MEMBERSHIP—ASSUMPTION.—In a prosecution for violation of subdivision 4 of section 2 of the Criminal Syndicalism Act, there must be proof of facts from which the jury may deduce or draw its conclusion that the defendant was a member of a proscribed organization, and, even though their assumption might be correct, the jury have no right to assume that defendant was such member in the absence of legal proof of such fact.

[9] ID.—CHARACTER OF ORGANIZATION—OPINION EVIDENCE.—In such a prosecution, it is what the organization does as an organization that stamps its character, and not what others may think about it; therefore, it is not error to exclude certain writings and

6. See 10 Cal. Jur. 816.

pamphlets purporting to be the opinions and conclusions of persons not members of the organization as to its purposes, motives, aims, its loyalty, and its patriotism.

---

(1) 12 C. J., p. 952, sec. 467 (1926 Anno.).    (2) 12 C. J., p. 163, sec. 19.    (3) 33 C. J., p. 163, sec. 19.    (4) 4 C. J., p. 961, sec. 2942; 40 Cyc., p. 2574.    (5) 33 C. J., p. 163, sec. 19 (1926 Anno.).    (6) 16 C. J., p. 1059, sec. 2500.    (7) 33 C. J., p. 165, secs. 25, 26.    (8) 33 C. J., p. 165, sec. 25.    (9) 33 C. J., p. 165, sec. 26.

APPEAL from a judgment of the Superior Court of Humboldt County. Percy S. King, Judge Presiding. Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

R. W. Henderson for Appellants.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendants and appellants were jointly tried and convicted of the crime of criminal syndicalism upon an information in the following words and figures, to wit: "The said defendants . . . on or about the 26th day of December, A. D. nineteen hundred and twenty-two at and in the County of Humboldt and State of California, did then and there willfully, unlawfully and feloniously organize and assist in organizing, and each was then and there, and did knowingly become then and there a member of an organization, society group and assemblage of persons, to wit: The Industrial Workers of the World, then and there organized and assembled to advocate, teach, aid and abet criminal syndicalism contrary to the form, force and effect of the statute in such case made and provided, and against the peace and dignity of the People of the State of California." The defendants' motion for a new trial being denied, an appeal was taken therefrom and from the judgment of conviction to this court. At the trial the defendants appeared in person and not by counsel.

The information, as set forth, shows that the defendants were charged under subdivision 4 of section 2 of the act of the legislature, approved April 30, 1919 (Stats. 1919, p. 281), defining criminal syndicalism and sabotage, etc.

The usual constitutional objections to the act in question are again presented for consideration, but, as these questions

have all been determined by the many cases decided by this court and by the supreme court of the state, it does not seem to us that it is necessary to again recite the same further than to state that the fundamental principle upon which government is established is the right of self-preservation against every form of illegtl or violent assault. **[1]** A constitutional government contains within itself the method, the manner, and the power of constitutional change and that change is always subject to the will, wish, and prerogative of the majority of the people exercising the right of suffrage in a legal and constitutional manner. So long as these methods of procedure are open and may be advocated by anyone, it cannot with consistency be urged that the right of the press or of free speech is either curtailed or abridged by an act which limits the exercise of the effort to make such changes as may be desired by peaceable means.

**[2]** Free speech and license are not convertible terms. One may freely state his reasons why a change in government is desirable, but he has no license by reason thereof to advocate the destruction of or take steps to incite others to destroy the property or imperil the lives of those who do not agree to such changes. One method is lawful, the other is not, because it strikes at the basis of all government and denies the right of self-preservation. This does not presuppose the continuance of the existing order, but it does presuppose that the existing order, condition, and structure of society shall be changed only by peaceable means and that violence and destruction have no place in human government. We find nothing in the constitution of this state nor in the constitution of the United States which denied the right of the state to protect itself from violent assaults whether directed from within or from without.

Though denominated a contest between labor and capital, this case exhibits nothing different from those that have preceded it which, as we have said, are all founded upon an act of the legislature which seeks to enforce the right of the state to exist. We think this to be the fundamental basis of the law and a sufficient answer to the constitutional questions urged on this appeal.

This case is also replete with exhibits of pamphlets, documents, and literature of the kind and character introduced, considered, and held sufficient to authorize a jury in deter-

mining the question of the unlawful purposes, teachings and practices of the I. W. W. and it would serve no useful purpose to again set them forth. There is testimony that the teachings incorporated in the literature referred to are still being promulgated. There is also testimony that all literature as to sabotage and its advocacy have been eliminated. These matters were questions for the jury to determine and not for this court, so long as there is sufficient testimony, if believed by the jury, to sustain the verdict. Omitting all reference to sabotage, or assuming that the organization has eliminated that word from its literature, there are still other matters proper to be considered by the jury. The preamble and constitution of the order were admitted in evidence and while we have said that the preamble, in and of itself, does not import violence, yet there is one paragraph, when read in connection with other literature in which "direct action" is advocated, may be considered upon the question of the continued unlawful purposes of the organization. That paragraph is as follows: "Instead of the conservative motto, 'A fair day's wage for a fair day's work,' we must inscribe on our banner the revolutionary watchword, 'Abolition of the wage system.'" If the direct action or the taking of possession of the farms and the factories of the country is to be other than that of returning a full equivalent in value for the property taken, the unlawful character of the organization, as it existed at the time of the trial of this cause, could be considered by the jury as established.

[3] The appellants also again raise the question of scienter or essential knowledge. While the word "knowingly" does not precede the word "is" in subdivision 4 of the act referred to, we are of the opinion that the subdivision has the same meaning as though it were worded in the manner contended for by the appellants. It does not mean that anyone who was elected an honorary member without his knowledge or consent of any organization or assemblage to advocate or teach criminal syndicalism would be amenable to the penalties prescribed in the act, but it does apply to one who voluntarily and by action on his part has become and is a member of such an organization. Under such circumstances knowledge is imputed and would exist in fact just as much as though it were specifically set forth and denominated in the act of the legislature condemning such

organization. The learned trial court took this view and instructed the jury as favorably as could be asked by the appellants as follows: "If you find from the evidence, beyond a reasonable doubt, that the Industrial Workers of the World is an organization, society, group or assemblage of persons organized to advocate, teach or aid and abet criminal syndicalism, and that the defendants knowingly became members of said Industrial Workers of the World at the time and place set forth in the information, then you should return a verdict of guilty of the crime charged in the information." Also, "In order to convict the defendants you must be convinced beyond reasonable doubt that the defendants *knowingly belonged* to an organization which in its nature was a criminal conspiracy to change industrial control and government by *unlawful* and criminal methods." (The italics are ours.) The words "knowingly belonged" referred to a previous period of time and impart the same meaning as "is" as that word is used in the statutes. The fact that the defendants knew of their membership in the organization was given to the jury as an indispensable prerequisite to a verdict of conviction. Upon the question of organization and becoming members the trial court instructed the jury as follows: "If you find from the evidence beyond a reasonable doubt that the Industrial Workers of the World was at the time and place mentioned in the information, an organization, society, group or assemblage of persons organized or assembled to advise, teach, or aid and abet criminal syndicalism, and that the said defendants did at said time and place, willfully, unlawfully, knowingly and feloniously organize, or assist in organizing or did knowingly become members of such organization, then your verdict should be guilty as charged in the information herein."

Other instructions covering practically the same grounds and couched in the same language were also given showing that the question of essential knowledge on the part of the defendants was distinctly and clearly presented to the jury as prerequisite to conviction. Whether our interpretation of the statute as requiring knowledge is or is not correct, it appears that the interpretation contended for by the appellants was accepted and followed by the trial court, and, therefore, upon this ground no injury has been in-

flicted, should it be finally held that knowledge of member-
ship may not properly be read into the statute.

[4] Much space and consideration is given in the appel-
lants' briefs to the testimony of the witness Townsend, and
also to the ruling of the trial court in sustaining objections to
questions asked by the defendant as to whether the witness
had or had not spent some period of his life in an institu-
tion for the care of the mentally afflicted. This court has
held that such testimony is admissible, not that it tends to
degrade the witness, but, that it does bear upon his credi-
bility and the weight and the consideration to be given to it
by the jury, but for the same reasons that we gave in the
case of *People* v. *La Rue,* 62 Cal. App. 276 [216 Pac. 627],
we hold such error not sufficient to authorize a reversal of
the verdict herein. The witness was allowed to and did
state sufficient to show himself to have been one of the most
reprehensible characters thinkable. He stated on the wit-
ness-stand that he had never told the truth before in his life.
He admitted participation in numberless atrocious offenses.
It is unfortunate that anyone confessedly guilty of so many
despicable crimes must be used as a witness; but competency
and character are separate and distinct terms. A witness
may be competent and yet of such unspeakably degraded
character as to be unworthy of belief, hence his testimony
is admissible and may be considered by the jury and given
such weight as they may deem it entitled to under all the
circumstances. It is not for the court to close the door
of reformation and say that a witness, who has never told the
truth up to a certain period of time, may not thereafter
mend his ways and speak words conformable to the facts.
The jury is the judge of the credibility of witnesses and
whatever views we may entertain of such a witness it is not
for the court to deny the jury the right to pass upon the
testimony of such a witness, or pronounce him in law in-
competent and exclude him from the witness-stand. It may
be that if the I. W. W. organization is a criminal conspiracy
in its essential fundamental principles, doctrines and ad-
vocacies no other kind or character of testimony or no other
kind or character of witnesses may be had from its mem-
bership.

Objection is also made to the admission of certain testimony
consisting of papers and documents found in one of the
rooms of the building known as 1211 Summer Street, in the

city of Eureka, and used as a meeting place of the I. W. W.'s.
Objection is also made that there is no sufficient testimony
showing the membership of Frank Cox and Lauri Mammi.
The point is also made that there is no testimony showing
that the defendants organized or assisted in organizing any
local branch of the I. W. W.'s or any such association or
organization. [5] If membership is established and the
criminal character of the organization shown, then, and in
that case, it becomes immaterial whether the testimony is
or is not sufficient to show that the defendants organized
or assisted in organizing a society having for its purpose
the promulgation of teaching the acts proscribed by the
statute. The defendants Cox, McGrath, and Kuilman were
arrested at 1211 Summer Street in the hall used by the
association. The testimony of the sheriff shows that at the
time of the arrest there was an assemblage of some thirty
persons; that a meeting was apparently in progress; that
the defendant Cox was seated at a table taking minutes;
that in an adjoining room was a great mass of literature
including stub-books, memoranda, delegates' blanks, and
secretaries' financial blanks. Some of these blanks were
filled out with the amounts of money received, the purposes
for which the money was expended with the names of the
defendants appearing as signed thereto. The stub-books
purported to be memoranda of moneys received from differ-
ent members. A sample of each will suffice. One stub
reads as follows:

"Industrial Workers of the World Jan. 20, 1923, $9.10.
Received from Frank Cox the sum of nine dollars and ten
cents for propaganda fund. Signed Mike Donivan."

Another, entitled:

"Member's Record. Delegate's and Branch Secretary's
Financial Report Blank. Industrial Union No. 120 of the
I. W. W. Date 10–2–22.

| | |
|---|---:|
| Initiation Fees | $ 8.00 |
| Due Stamps | 12.50 |
| Gen. Org. Stamps | 4.00 |
| Gen. Defense and Relief Stamps | 3.00 |
| C. Case | .50 |
| 100 Workers | 3.00 |
| Literature 100 Sol | 3.00 |
| Il Proletario | .90 |
| Russ Paper | .60" |

Then follows a list of disbursements, at the bottom of which appears: "Delegate or Branch Sec'y Frank Cox. Del. No. H–1640." On the reverse side: "Report of amount Collected and of whom. I. U. No. 120 under the date 9–28 Oscar Horka Card Number 767180 Oct. Dec. Dues $1.50. Initiated by Union 120 month 9 date 18 year 21. The 9th month 29th day. Robert Whiteside. Card No. 723452. Sept.-Dec.. Dues $2.00. Assessments $1.50. Initiated by Union 120. Month 7 day 1 year 22. A. Kent. Card No. X20123 Dec. Dues 50c. Assessments 50c. Date 5–24–22."

There are several reports of this kind containing a list of the names of more than twenty persons purporting to be members and of dues and assessments received therefrom. These stub-books and reports were all found at the place occupied by the defendants at the time of their arrest. The fact that a meeting was being held is apparently undisputed. This is shown by the cross-examination of the witness, Sheriff Arthur A. Ross, conducted by the defendant Frank Cox. Upon the offer of the district attorney of the exhibit just referred to, the defendant McGrath, apparently speaking for all of the defendants, made the following objection:

"We wish to offer an objection against the introduction of these exhibits on the ground that the proper foundation has not been laid; nothing here to show there is any such an organization as the Industrial Workers of the World, no testimony to show there is such an organization existing; and there is no testimony to show just how that organization operates; nor shown that it has books or that it issues any membership books, or how it operates, whether by credentials or letters. It would seem testimony along that line should be given by someone familiar with its methods before any evidence of that kind is introduced. Those cards and credentials may have been issued by some (the transcript shows the word 'outcase' but must mean outside or some similar term) organization of the I. W. W., and the seal placed on the credentials. No evidence of a seal if they used a seal. There is no seal impression on those credentials and papers."

[6] It must be admitted that for certain purposes there was no foundation laid for the introduction of the exhibits

just referred to, but as the objection was general in form and does not call attention to the fact that the signatures to the papers were not properly authenticated and if admissible for any purpose the rule announced in *People* v. *Collins,* 48 Cal. 277, applies. It is there held: "That where evidence which is competent only for a particular purpose is admitted generally, and the counsel for ·the defendant fails to ask the Court to limit the evidence to the purpose for which it was competent, or to ask a charge to the jury to that effect, the defendant cannot afterwards complain that the testimony was inadmissible for some other purpose."

[7] This testimony was admissible in connection with what we have heretofore stated showing the presence of the three defendants, the fact that one of them was apparently taking minutes of the meeting, to show that the I. W. W. or whatever the assemblage was that was using 1211 Summer Street was transacting business and also the kind and character of business that was being transacted. That it would not be sufficient to predicate a finding of membership therein or that the defendants were doing anything wrong may be admitted. So far as the defendants are concerned, for reasons hereinafter stated, the testimony is harmless even though considered generally instead of limited specifically to the purposes for which it was admissible and which doubtless would have been the case had the court's attention been called to the fact that the signatures were not properly authenticated. To constitute proof by way of an admission of the recitals contained in the exhibits, the signatures thereto should have been authenticated in the manner provided by section 1940 of the Code of Civil Procedure. The exhibits being considered show only membership and transaction of business if taken at the full face value, which, as to two of the defendants, McGrath and Kuilman, is admitted.

Prior to the admission of this testimony, over the objection of the defendants, it appears that similar testimony had been introduced without any objection whatever, as appears from the following: "The bearer, fellow-worker, C. F. McGrath has been duly appointed as delegate for all Industrial Unions of the I. W. W. and is authorized to collect dues and initiate new members. Dues are 50c per month. The

initiation fee is $2.00. Dated this 26th day of November 1922, signed by the General Sec'y-Treas. of the I. W. W. and Chairman of the G. E. B., who have been authorized to place the seal upon these credentials. The credentials Expires Mch. 31, 1923. Signed John Grady General Sec'y-Treas. Rob't E. Daly Chairman. G. E. B. Issued by the Industrial Union No. 120." Across the end appears "Card No. 829978. Name C. F. McGrath." Upon the line beneath "Delegate's Signature and Card Number." On the inside of the folder appears this entry. Under the head of date appears "11–26–22. From Frank Cox Supply Clerk. Supplies received. Due Bks. $60.00. Due stamps $350.00. Assessments G. O. $100. G. D. 138." On the bottom of the inside of the folder appears "name of delegate C. F. McGrath. Card No. 828878. Credential No. H 1417. Issued by Del. H. 1640. Date 11–26–22."

This exhibit was taken from the person of the defendant McGrath and, together with twenty-six other exhibits covering the activities of the I. W. W. to the same purport as the ones objected to, were admitted in evidence without any objection whatever.

We come now to the question of the testimony as to the membership of the defendant Cox. As we have stated, the defendant Cox, together with the defendants McGrath and Kuilman, were arrested at Normana Hall, 1211 Summer Street, the place from which in an adjoining room a large number of exhibits, to which we have referred, were taken. At the time of his arrest the defendant Cox was seated at a table. Upon being searched the following exhibits were taken from his person:

"Lumber Workers Industrial Union No. 120, I. W. W.
     "1001 West Madison Street, Chicago, Ill.
                                    "December 19, 1923.
"Frank Cox, Box 91, Eureka, Calif.
     "Fellow-Worker.
"We received your letter of the 14th. I. U. 310 has sent your five of the new credentials. I. U. 120 is figuring on putting the new credentials on the field the first of January. We will send you some about that time. It is necessary for all the delegates to obtain the amount of supplies transferred

from the old credentials to the new credentials in order to keep the accounts straight.

"With best wishes,

"Yours for Industrial solidarity,

"WILLIAM BRYAN,

"Chairman, O. C."

Also the seal of the Industrial Workers of the World. Around the outside of seal but within its circle is "Industrial Workers of the World March 12th, 1917, Chicago, Illinois."

Also a booklet entitled as follows: " 'An injury to one is an injury to all.' Preamble and constitution of the Industrial Workers of the World. Organized July 7, 1905. General Administration: 1001, West Madison Street, Chicago, Illinois, U. S. A. As adopted 1905 and amended by conventions and ratified by referendum votes, 1906, 1907, 1908, 1910, 1911, 1912, 1913, 1914, 1916, 1919, 1920, 1921." There also was taken from the person of the defendant Frank Cox exhibit No. 27, being a typewritten sheet of paper purporting to contain the minutes of the meeting of the I. W. W. organization held on December 17th, at Eureka, California, by the members of the organization and is as follows: "Meeting called to order One P. M. Dec. 17th, at Eureka, California. By traveling Del. 24 members present. Gus Louis elected chairman, Harry Williams, Rec-Sec'y." At the bottom appears the seal of the Industrial Workers of the World. Around the outer edge of which appears the following: "Industrial Workers of the World. Eureka Branch Eureka, California." And then the signature, "Frank Cox, Supply Clerk." The membership card taken from the room referred to bearing the name of Frank Cox was also admitted. This card was admitted after the general objection to which we have adverted. The card reads as follows: "I. W. W. headquarters in Eureka on the 23rd day of January of this year," and on the 5th page of the book or card appears the name "Frank Cox. Initiated by # 573 D. Murray. M. J. M. W. I. Union No. 573. November 3, 1919. Department General Construction. Industry G. C.," with the printed signature of Thomas Whitehead "Gen'l Sec'y-Treas. Gen No. 748461." On the following page appears the following: "Transfer record month Nov. date 7 year 20. From Union No. 310 to Union number

570. April 7–22. From Union No. 310 to union number
120. July 20–22 from Union No. 120 to Union Number 130.
Sept. 17–22. From union no. 130 to Union Number 120."
On other pages appear other data of transfers and canceled
stamps of various denominations. The cross-examination of
Sheriff Ross by the defendant Cox also brings facts material
to be considered by the jury in determining his member-
ship in the Industrial Workers of the World. We glean
from the cross-examination the following upon this point:
"Q. Mr. Ross, you and Deputy Sheriff Mr. Long arrested
Mr. McGrath and I and another party in Normana Hall?
A. We did. Q. Some time in December, was it not, Mr.
Ross, I mean about the month of January 6th or somewhere
around there? A. I am not certain of the date. Q. About
what time was it when you came in, Mr. Ross? A. Oh, it
was after 1 o'clock, some time between 1 and 3 if I remem-
ber rightly. Q. How did you gain admittance to Normana
Hall, Mr. Ross? A. Walked in the door. Q. Walked in;
was there any guard in the door? A. I think there was
someone at the door, yes. Q. Do you recall seeing me in
the hall that time, Mr. Ross? A. Yes. Q. What was I
doing? A. You were at a table I believe. Q. Was anyone
at the table with me, Mr. Ross? A. I think there was a
man by the name of Williams. Q. Now, Mr. Ross, did you
take the minutes of that meeting? A. I think I did, yes.
Q. Do you know where they are at the present time? A. No,
I can't say right now; they may be—I think they are in
the possession of the district attorney, or they may be in
my possession. I think they were used at the preliminary
examination. I know they were given to me by you.
Q. (Mr. Cox.) I want to get those minutes that you took
away from us. Q. Did you take them away from the meet-
ing—from the justice court? A. I think those minutes were
all used at the preliminary examination. Mr. Cox: . . . If
the Court please, I would like to have the district attorney
or the sheriff, I don't know which, to produce the minutes
of the meeting held in Normana Hall here December 26,
1922. Court: Is that the date of the arrest? Mr. Cox:
Yes, sir."

Further questioning about the minutes brought out the
following answers: "The minutes of that meeting was in
tablet, I know that I took the tablet and pinned it right

through down the back through the writing and put the balance of the literature or whatever in the minutes there and put it altogether in the tablet.''

These minutes were not produced and do not appear in the transcript. All these facts and circumstances, we think, sufficient to justify the jury in coming to the conclusion that the defendant Frank Cox was a member of the organization known as the Industrial Workers of the World.

As to the membership of the defendant Lauri Mammi, the testimony is strikingly slight. We are cited by the respondent to the following, being papers seized at Normana Hall and which lacked the authentication as hereinbefore stated. These papers are as follows:

''Receipt 20, issued to Lauri Mammi December 24, 1922, at Eureka, Calif., by Frank Cox. $2.50.''

''Application card taken out at Eureka, California, December 20, 1922. Name, Abel Martin. Card No. 233757. Initiated by Union No. 800 Aug. 15, 1918. Signed Lauri Mammi H–1402.''

''Application. Name Ida Palo at Eureka, Cal., Dec. 23, 1922, and the application signed by Lauri Mammi H–1402.''

Also the following questions and answers and statements in the testimony of McMillan as to papers obtained at Normana Hall: ''Q. Where did you get that, also from the same place? A. Yes. Q. From where, the headquarters in Eureka? A. Yes. Mr. McGrath: We want it understood that the credential was taken from Lauri Mammi. The Court: The papers were taken from the headquarters at 1211 Summer Street.''

We are referred to this as an admission of Mammi of credentials. It is apparent from what the court said that the reporter's transcript is in error and that McGrath intended to say ''we want it understood that the credential was not taken from Lauri Mammi,'' as it is evident it was not taken from his person, whatever the paper may have been. Outside of the reference given to us by the respondent, we have found another exhibit of like import. It reads: ''Industrial Workers of the World. Union No. 120 Jan. 20, 1923. To Lauri Mammi. Del. No. H–1402. From Mike Donivan Del. No. H–1442. 5 membership cards. $10. Total $10.''

There may be other reference or other receipts of like import in the transcript relating to the defendant Mammi but we have not discovered them, but none of the exhibits to which we have referred were authenticated in the manner required by law to make their contents *prima facie* evidence of the matters therein stated, but assuming that the receipts of the papers to which we have just referred to constituted *prima facie* evidence of everything therein stated, it does not prove membership in any organization whatever. At best it would only show dealings with and for the organization. This fact would be true of anyone who rented Normana Hall to local Union No. 120 of the I. W. W. at Eureka, California, but that would not constitute proof of membership. No card was found upon the defendant Mammi, no card was found at the headquarters of the I. W. W., and the defendant Mammi was not arrested there and was not participating in the meeting which was being held at the time of the arrest of the other defendants and the seizure of the literature contained in an adjoining room to the hall in which the meeting was being held. The transcript does show that some literature relating to the I. W. W., whether for or against does not appear, was found upon the defendant Mammi, but this literature was not introduced in evidence and, therefore, we know nothing of its nature or effect. [8] From the fact that the name Lauri Mammi appeared upon the papers to which we have referred, the jury doubtless assumed that the defendant Mammi was a member of the organization. This assumption may be in accordance with the facts, but assumption is not warranted in criminal cases. There must be proof of facts from which the jury may deduce or draw its conclusion and render its verdict. In other words, the jury had no right to assume a fact, even though such assumption is correct, in the absence of legal proof of such fact. The jury having found generally that the defendants were guilty as charged, if any of the elements constituting the offense are sufficiently proven it is immaterial that the testimony as to other offenses is insufficient. We have shown that the testimony warranted the conclusion of the jury that the defendants Cox, McGrath, and Kuilman were members of the organization and it necessarily follows that whether they were organizing or assisting in organizing, as charged, becomes

unimportant and hence whether the word ''organization,'' as used in the statute, is correctly interpreted in the case of *People* v. *Thurman,* 62 Cal. App. 147 [216 Pac. 394], is of no importance, so far as this cause is concerned.

[9] Complaint is also made by the appellants of the ruling of the court in excluding certain writings and pamphlets purporting to be the opinions and conclusions of persons not members of the organization as to its purposes, motives, aims, its loyalty, and its patriotism. The inadmissibility of such testimony is so clearly apparent that we do not need to give the ruling of the court thereon any extended consideration. It is what the organization does as an organization that stamps its character and not what others may think about it. There were some other objections of minor importance as to the admissibility of testimony as to where some of the witnesses may have stated opinions and conclusions more or less interspersed with other testimony as to facts. These we have examined but do not find in them anything of a reversible nature and so are not set forth herein.

The judgment and order of the trial court as to the defendants Cox, McGrath, and Kuilman are affirmed, and as to the defendant Lauri Mammi the judgment is reversed.

Hart, J., and Finch, P. J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 19, 1924.