[Crim. No. 3902. Second Dist., Div. One. Aug. 8, 1945.]

THE PEOPLE, Respondent, v. HYMAN BERNSTEIN, Appellant.

Morris Lavine for Appellant.

Robert W. Kenny, Attorney General, and L. G. Campbell, Deputy Attorney General, for Respondent.

DORAN, J.—Defendant was accused by information of the offense of grand theft. A trial by the court without a jury resulted in a judgment of guilty, from which defendant appeals.

According to the testimony of Elizabeth Hanson, the victim of the alleged theft, as related at the preliminary hearing, she met defendant in a cocktail bar some time before the date of the offense under circumstances described as follows: "I was sitting at a bar and he walked up and sat down beside me and started talking to me." Thereafter, they were together socially seven or eight times. On the night of the offense, they sat at "the bar and drank several drinks," thence to a "chop suey place" and finally to the witness's apartment. The witness testified, as to her object in "going home" and as to the ensuing events, as follows,

"A. I had high heels and a dress, and I had had several drinks, and I said that I felt that I should go home and put my slacks on and low heel shoes on, and I wanted to take a walk, to go for a walk and get some air, and when we got in my apartment he stated, 'We better have some coffee be-

cause we could not get coffee down at the chop suey place,' and I said, 'It might be a good idea', so I put the coffee pot on the fire and made the coffee and poured the coffee, to have it cooling while I changed my clothes, and when I came back and sat down at the table to drink my cup of coffee I said, 'I forgot the cream,' and he said, 'Betty, you should not put cream in coffee. You should drink it black and it will sober you up,' and I said I didn't like black coffee, and I got the cream, and when I came to the table with it he still insisted that I drink it black, and I said all right, and I took one sip of it and I said, 'Drunk or sober, I still don't like black coffee,' and he still insisted, and I said, 'Oh, all right,' and I took the cup of coffee and I drank it down with one gulp, and I don't remember ever leaving that table. I woke up at six o'clock in the morning and I was in my bedroom, in my nightgown—— in my bed in my nightgown, and my door was standing open, and my brassiere, with the money I had in it pinned on me was gone, and even the brassiere was gone, and I have never been able to figure out what he wanted the brassiere for.

"Q. How much money did you have pinned in the brassiere? A. I had $580.00 rolled in a handkerchief and pinned in my brassiere, . . ."

". . . By Mr. DANOFF: Did you see the defendant again after this day that you have just told us about?

"A. No, sir, I have never seen him until they called me to come to the police station, I believe it was Thursday last week.

"Q. And what name did you know the defendant by? A. He told me once that his name was Frank Rudeni and another time I asked him and he said Brudeni, and I said, 'I thought you said Rudeni,' and he said, 'No, honey, it is Brudeni.' "

The witness Hanson did not appear at the trial.

The alleged offense was committed June 20, 1943; defendant was arrested July 26, 1944; the date of the preliminary hearing does not appear in the record; defendant was arraigned in the superior court August 23, 1944; the trial was set for October 30, 1944; on said last mentioned date the trial was continued to December 6, 1944, witnesses instructed to return and a bench warrant issued for Elizabeth Hanson; on December 6th the trial was continued to January 3, 1945, due to illness of defendant's counsel, witnesses instructed to return and another bench warrant issued for the witness Hanson; on January 3, 1945, the trial proceeded and in the absence

of the witness Hanson, said witness's testimony given at the preliminary hearing was introduced.

It is contended on appeal, first, that the evidence is "insufficient to sustain the verdict"; second, that the court erred in receiving the evidence taken at the preliminary hearing, that due diligence was not shown; and third, that the "use of forced evidence taken at the preliminary hearing was highly prejudicial."

With regard to the first and third above mentioned contentions, it is argued that the testimony of the witness Elizabeth Hanson was given "under court order and against her will" and that "under the circumstances, the testimony given under compulsion was of such a character as to render it unworthy of credence or belief." The record of the witness's testimony referred to reveals the following:

"THE COURT: Speak up loudly so we all can hear you.

"THE WITNESS: Your Honor, I don't care to testify.

"THE COURT: You don't care to testify?

"THE WITNESS: No, sir. I wish to withdraw the complaint.

"THE COURT: Well, it is just a little too late now. Unless you feel that any testimony that you might give would incriminate you in any way.

"MR. COOPER: The word 'degrade' is also there.

"THE COURT: I don't know what you are talking about, Mr. Cooper.

"MR. COOPER: Well, we will get it. It is in the Code section. It is in the Code of Civil Procedure as well. The witness may refuse to answer the question upon the ground that the testimony may incriminate or degrade her.

"THE COURT: I have asked her that. I said her answer—— that she does not—— that it is not on that basis that she refuses to testify. Do you refuse to testify now on the ground that your testimony might incriminate you in any crime?

"THE WITNESS: Yes, sir.

"THE COURT: Or degrade you?

"THE WITNESS: No, sir.

"THE COURT: Well, let us go ahead and answer the questions.

"Q. By MR. DANOFF: Where do you live, Mrs. Hanson?

"MR. COOPER: At that point I further object to the testimony of the witness on the ground that the transcript shows that the witness plainly claimed the privilege and that that privilege was denied her.

"THE COURT: The objection may be overruled.

"MR. COOPER: That objection is to the entire testimony.

"THE COURT: Very well."

The witness then proceeded to testify with apparent willingness. At the conclusion of which, the record is as follows:

"MR. COOPER: I would ask that the witness remain, if your Honor please?

"THE COURT: You may remain in the courtroom.

"MR. COOPER: Your Honor, may I recall the witness?

"THE COURT: Yes. Mrs. Hanson, come back to the stand, will you please?

"THE WITNESS: Yes, sir.

"THE COURT: Mr. Cooper, do you still want to ask this witness the reason why she answered that she felt she didn't want to testify?

"MR. COOPER: Yes.

"A. Well, I will tell you. Did you ever hear of a person that didn't want to let the rest of the world know that she was a big fool? That happened to be my reason.

"THE COURT: Anything further?

"MR. COOPER: No, that is all.

"MR. DANOFF: Now may this witness be excused?

"THE COURT: All right, you may be excused, Mrs. Hanson."

The witness's attitude as indicated by the expressions, "Your Honor, I don't care to testify," and "I wish to withdraw the complaint," presented a matter with which the defendant was not concerned. Such a situation involves an issue between plaintiff's witness and the State. The determination of such issue is not a matter about which the defendant may be heard to complain. Such an incident may provide argument as to credibility but it in no manner affects the rights of the defendant. ■ There is nothing about the witness's testimony that suggests any inherent improbability as a matter of law. The evidence is sufficient to sustain the judgment.

■ With regard to the second contention, namely, that the court erred in receiving in evidence the transcript of the testimony given at the preliminary examination, the record discloses that the witness Hanson was subpoenaed. Although the subpoena was not produced, Officer Flanigan testified:

"Q. About when did you first have a subpoena for her, do you recall? A. Sometime last fall, at the time I served her originally I don't remember the date I served her at Apartment 111, 1830 North Cahuenga Boulevard.

"Q. That was sometime last fall? A. Yes, sir.

"Q. Did she appear in court at any time that you know of after that, did you see her in court at any time? A. No, sir, she was not there that morning, she may have come later."

Deputy Sheriff Barron testified with regard to service of the bench warrant referred to that,

"I received a warrant for her on October the 30th and I went and found her at that time" . . . "when I served the warrant she told me she had been in court on the day she was supposed to be and after a little questioning I called the court to verify that fact and they informed me after checking that the bailiff had seen her in court on that day.

"Q. Had she been ordered back in court on December 8th? A. December 6th, I think it was.

"Q. December 6th? A. Yes, sir. . . .

"Q. Then when you went out with the warrant did you serve the warrant? A. I found Mrs. Hanson had been sick.

"Q. Yes? A. Yes.

"Q. What happened then? A. I phoned the court and verified, she said she had been in court on the day that she was supposed to be and I called the court by phone and talked to the judge over there and finally he talked with the bailiff and the bailiff said she had been in court, she came late and he had told her to come back, to return on December 6th. I was informed of that by the court.

"Q. That was what you learned from the court? A. Yes, sir.

"Q. In other words, she was notified to return on December 6th? A. Yes, sir."

The witness did not appear on December 6th nor at any time thereafter. It was established by competent evidence that she had left the state and had gone to Illinois. On the showing briefly outlined above, the transcript of the witness's testimony given at the preliminary examination was admitted in evidence. Under the provisions of paragraph 3 of section 686 of the Penal Code, only one question was presented for the trial court's determination, as revealed by the record herein, namely, was it "satisfactorily shown to the court" that such witness could not, "with due diligence be found within the state." With reference to the same question presented in *People* v. *Lewandowski,* 143 Cal. 574, 576 [77 P. 467], Mr. Justice Angellotti observed, "That the right of a

defendant to be confronted in person by the witnesses against him is a most important one, and that the trial court should be fully satisfied by the evidence that the absent witness cannot with due diligence be found in the state before allowing the deposition of such witness taken on the preliminary examination to be read, may be freely conceded."

"The question, however, as to whether it is satisfactorily shown that such witness cannot with due diligence be found within the state is a question of fact that is addressed to the trial court, to be determined by it from evidence introduced before it (*People* v. *Plyler*, 126 Cal. 379 [58 P. 904]), and with the determination of that question of fact by the trial court this court will not interfere, unless the evidence thereon is such as to satisfy the court that the trial court abused the discretion confided to it in holding that due diligence had been used, and that the witness could not be found. (*People* v. *Witty*, 138 Cal. 576 [72 P. 177]; *People* v. *Reilly*, 106 Cal. 648 [40 P. 13].)" The foregoing rule has been uniformly upheld. (See *People* v. *Day*, 219 Cal. 562 [27 P.2d 909]; *People* v. *Barker*, 144 Cal. 705 [78 P. 266]; *People* v. *Padilla*, 81 Cal.App. 528 [254 P. 585]; *People* v. *Ramos*, 52 Cal.App. 491 [199 P. 544]; *People* v. *Boyd*, 16 Cal.App. 130 [116 P. 323].)

In *Heintz* v. *Cooper*, 104 Cal. 668, 669 [38 P. 511], in an appeal by plaintiff in a civil action from an order granting a new trial, the court, on the subject of "diligence" observed that, "Diligence is a relative term incapable of exact definition. What would amount to due diligence under one state of facts would fall absolutely short of it under another and different state of facts. It depends, therefore, so essentially upon the particular circumstances of each case, with all their distinct and varying phases and bearings, as they have appeared to the lower court at the trial and throughout the conduct of the cause, in determining whether diligence has been used in any particular instance, that this court should hesitate to disturb a ruling upon this ground where it has any substance whatever upon which to rest. The presumption is that the discretion has been properly exercised, and that presumption must be overcome by a clear want of facts before the order will be disturbed." The above quotation is cited in *People* v. *Boyd*, and *People* v. *Ramos*, *supra*, And the Day case, *supra*, cites the Ramos case, *supra*, with regard to the same subject.

The rule is statutory and prevails in most of the states. (See 79 A.L.R. 1411, 90 A.L.R. 379, 122 A.L.R. 440 and 23 C.J.S. (under Criminal Law) § 999.)

■ Nor is the procedure allowing the introduction of such evidence repugnant to pertinent constitutional provisions, where, as here, the defendant was confronted by the witness and given an opportunity to and did, in fact, cross-examine the witness. "The state has full control over the procedure in its courts, both in civil and criminal cases, subject only to the qualification that such procedure must not work a denial of fundamental rights, or conflict with specific and applicable provisions of the constitution." (*Brown* v. *New Jersey*, 175 U.S. 172, 174 [20 S.Ct. 77, 44 L.Ed. 119].)

■ Under the authorities and, by virtue of the record herein, it cannot be held that the trial court abused its discretion by admitting in evidence the former testimony of the absent witness. It should be noted in this connection that there was no showing that the testimony in question would have been any different if the absent witness had been present at the trial, nor, that evidence of an impeaching character had materialized since the preliminary examination, nor, that in any other respect valid grounds for objection to the admission of such testimony were present.

The defendant denied knowing, or, ever having met Elizabeth Hanson. ■ The information alleged the prior conviction of a felony which was not established at the trial but, on cross-examination the defendant admitted the conviction of a felony other than the one alleged. Such admission amounted to a well-established form of impeachment.

There are no prejudicial errors in the record and the judgment is affirmed, as is the order denying the motion for a new trial.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied August 17, 1945, and appellant's petition for a hearing by the Supreme Court was denied September 7, 1945.