[Crim No. 4156. Second Dist., Div. One. Oct. 16, 1947.]

THE PEOPLE, Respondent, v. MICHAEL J. GALUPPO, Appellant.

Anthony C. Kolda for Appellant.

Fred N. Howser, Attorney General, and Alberta Gattone, Deputy Attorney General, for Respondent.

WHITE, J.—In an information filed by the District Attorney of Los Angeles County, the above-named defendants were jointly charged in count I with the crime of robbery, and in count II with a violation of section 503 of the Vehicle Code. Following the entry of the not guilty pleas the cause proceeded to trial before a jury, resulting in the conviction of both defendants on all counts of the information. Defendant Galuppo alone prosecutes this appeal from the judgments of conviction and from the order denying his motion for a new trial.

Viewing the evidence in a light most favorable to the prosecution as we must do following a guilty verdict, we find in the record testimony that on the early morning of December 26, 1946, the defendants at the point of a gun held up and robbed a taxi driver, taking from him certain cash and a wrist watch.

They then forced the taxi driver to alight from his vehicle and the defendants drove away in it. After driving the taxicab but a few blocks, they encountered engine trouble, the engine stopped, they were unable to restart it, abandoned the cab and after walking several blocks were taken into custody by two police officers approximately 20 minutes after the consummation of the crime. At the time of the arrest this appellant had a gun in his pocket and was wearing the wrist watch taken from the cab driver.

 The facts and circumstances surrounding the robbery as testified to by the victim thereof were not disputed by either defendant. For his defense, appellant herein relied upon testimony given by himself and his codefendant that he was forced by the latter, at the point of a gun, to participate in the robbery; that whatever he did was done because he was in fear of his life. In that regard, appellant testified that he had known his codefendant for two or three days prior to the robbery; that on the night of the holdup the two defendants met at a bar, consumed some liquor, a little later partook of some food and black coffee; that they then decided to take a taxicab to the home of a girl friend of appellant who resided at 2916 East Sixth Street in the city of Los Angeles; that shortly after they entered the cab appellant's codefendant directed the driver up a blind street. That thereupon his codefendant drew a gun and placed it against appellant's ribs, saying, "Just keep your mouth shut and do what I tell you." That after the cab stopped and the driver alighted therefrom, appellant's codefendant said to him, "Go out there and frisk him; see if he has got any more money; see if he is lying." That when they got out of the cab appellant's codefendant said to him, "Get out of the way, you yellow so-and-so," and "Let me frisk him." The cab driver had already delivered the money from his wallet to defendant Marlatt. Appellant further testified that following the robbery his codefendant, pointing the gun at him, said, "You better get back in the cab." That when they abandoned the cab and started walking, he pleaded with defendant Marlatt to give him the gun and wrist watch, a plea that was answered a second or two before the arrival of the police officers, when defendant Marlatt handed appellant the gun and wrist watch. Defendant Marlatt corroborated appellant's testimony as above narrated.

There was before the jury, however, testimony that shortly after their arrest the defendants made statements to the officers

outside the presence of each other. These statements were practically identical, and coincided with each other. In his statement to the officers, outside the presence of his codefendant, appellant told the officers that the gun belonged to him; that he had purchased it several days before for $2.00; that before the defendants entered the cab they had talked about a holdup and appellant had given the weapon to defendant Marlatt. Appellant admitted having the gun in his pocket when the officers arrived, saying, ''Marlatt gave it back to me after we held the cab driver up.'' Finally, when asked if there was anything further he wished to tell the interrogating officer, appellant said, ''All I can say is that I am glad it ended this way. I don't know why I did it, but I was broke.'' Thereafter, both defendants were brought before the officers and in the presence of each other corroborated the statements separately made by them. The foregoing statements were made on December 26, 1946, and the first suggestion that appellant desired to change any of such statements was made about April 6, 1946, when he addressed a post card to one of the police officers.

The evidence that appellant actively participated in the robbery was direct, clear, positive, and admitted by himself. Therefore, his defense that he was forced to participate by threats and fear of bodily injury did no more than create a conflict in the evidence. It was for the jury to determine whether appellant in his statements to the officers made shortly after his arrest or in his testimony, spoke the truth.

Indeed, there was enough testimony of appellant's guilt, furnished by himself, to give rise to a conflict in the evidence, and that conflict having been resolved against appellant by the jury, the verdict will not be disturbed on appeal. The logic of the jury's conclusion that appellant was a willing aider and abettor of his codefendant is strongly fortified by appellant's conduct during the robbery and immediately thereafter, and by his aforesaid admissions made shortly after his arrest.

■ Appellant's contention that a reversal of the judgments should ensue because under the evidence in this case an inference of innocence might be drawn just as reasonably as an inference of guilt, is answered adversely to him by the cases of *People* v. *Newland,* 15 Cal.2d 678, 681, 682 [104 P.2d 778]; *People* v. *Bassett,* 68 Cal.App.2d 241, 246 [156 P.2d 457]; and *People* v. *Wade,* 71 Cal.App.2d 646, 650 [163 P.2d 59]). Appellant's claim that the evidence is in-

sufficient to support the verdicts and judgments cannot, therefore, be sustained.

It is next urged that appellant was not accorded that fair and impartial trial guaranteed by law to everyone accused of crime. In this regard appellant asserts "that treatment accorded appellant's counsel, including suggestions and threats of punishment for contempt which were unwarranted . . . may well have served to discredit the defendant in the eyes of the jurors."

The first instance of claimed impropriety in the remarks of the trial judge occurred during the cross-examination of the complaining witness. In an effort to impeach the witness, appellant's counsel was reading from the transcript of the preliminary examination when an objection was interposed. In ruling upon the objection, the trial judge stated,

"I will sustain the objection to this cross-examination upon the ground it is improper. You cannot go to work and read the transcript where there is testimony that does not vary from his testimony here."

On another occasion, during the recross-examination of the same witness, appellant's counsel was examining the transcript of the preliminary examination in an apparent effort to locate certain testimony when the following transpired:

"THE COURT: You may proceed, Mr. Kolda, please. We are waiting. Mr. Kolda, will you please . . .

"MR. KOLDA: Your Honor, I am sorry. I am still of the impression there is some testimony here . . .

"THE COURT: Well, we cannot take time out while you read the transcript. You were furnished that transcript several days ago and you have had plenty of time to read it. You cannot take time out during the course of this trial, while the jury is waiting here, while you read that transcript."

And again, during the direct examination of appellant, his counsel was questioning him as to his "past history." After testifying to his age, his residence and past employment, the record reflects the following:

"Q. Just prior to that what were you doing? A. Well, two and one-half years prior to that I spent in the Navy, sir.

"Q. You spent in the Navy? A. That is right; United States Navy.

"THE COURT: I think we have gone far enough into the past history.

"Q. BY MR. KOLDA: Where is your home?

"A. Well, before I went in the Navy my home was in New York City, sir.

"Q. You were discharged here in Los Angeles?

"Mr. Leavy: I object to that as immaterial.

"The Court: Objection sustained."

Complaint is made that the court permitted an unduly long and extended examination of appellant after the latter had stated some three times that he did not know the name of the police officer he said had beaten the codefendant Marlatt and that the trial judge himself conducted a lengthy inquisition along the same lines. While this examination was in progress the court in sustaining an objection said to appellant's counsel:

"Objection sustained. I do not want counsel to make any more voluntary statements. Limit yourself to objections. I do not want any statements of fact or alleged facts."

Further complaint is made that the court unduly restricted the argument to the jury by appellant's counsel with the following statement:

"Counsel should not argue as to punishment. That is a matter that the jury does not have to decide; you should not consider that."

Again, after appellant's counsel in his argument to the jury had stated, with reference to the testimony of the codefendant, "I believe he was telling the truth. I believe he knows—and I heard that he was advised it would be San Quentin for him for quite a while," the district attorney started to object, whereupon the trial judge said, "Just a minute. I have noticed four instances, sir, in which you have made statements as to what you know, what you believe, which is not in the evidence. Now, you know that is not proper and . . .

"Mr. Kolda: Your Honor, . . .

"The Court (continuing): . . . you should know that I won't tolerate that in my court. You may argue the evidence, but as to matters which you say you personally know or which you personally believe, you must refrain from those things. It is highly improper and unethical. It is contempt of court if you are going to persist in it."

At no time during the trial did appellant's counsel assign the remarks of the trial judge as erroneous or prejudicial. The law is well settled in this state that under ordi-

nary circumstances, unless a party aggrieved by claimed misconduct on the part of the trial judge promptly calls the attention of the court to the purported impropriety, his claims in that regard will not be considered on appeal. The reason for this rule is to give the judge an opportunity to correct the error, if any, and remove any prejudice therefrom, by promptly instructing the jury to disregard the statements made. Although appellant's counsel made no objections to the remarks of the trial judge, the latter, of his own motion, at one point of the foregoing proceedings, addressed the jury as follows: "Mr. Kolda—Ladies and gentlemen, I am sorry this has happened. I don't want you to draw any inference from the situation which has occurred here in court constantly. I am trying to help counsel. But I must insist that you cannot read that transcript."

Though it be conceded that the attitude of the judge towards appellant's counsel was brusque and at times may have manifested a feeling of displeasure toward counsel, we cannot agree with appellant that the remarks of the court were derogatory or tended to "discredit the defendant in the eyes of the jurors." After reading the entire record of this trial, we are satisfied that the remarks of the trial judge did not result either in prejudice to appellant or in a miscarriage of justice. Appellant not having assigned the remarks of the judge as prejudicial, and the nature of the remarks not being such that any prejudicial effect thereof could not have been cured by prompt admonition to the jury to disregard them, we must follow the well-established rule that they cannot be made a ground for reversal of the judgments on appeal.

Appellant complains of the ruling of the court sustaining an objection to the introduction into evidence of a card in his possession at the time of his arrest, and upon which appeared the address to which the cab driver was directed to transport appellant and his codefendant on the night of the robbery. We fail to perceive any prejudicial error in this ruling. Appellant had testified regarding the address and who lived there, while the cab driver in his testimony agreed that he was directed to an address on East Sixth Street. No effort was made by the prosecution to contradict this line of testimony.

Finally, appellant asserts that "no legal verdict was rendered or recorded." In this connection it appears that

when the jury returned into court with their verdicts the following proceedings transpired:

"THE COURT: In the case of *People* v. *Michael J. Galuppo and Mark A. Marlatt,* No. 110901, let the record show the defendants are in court and the jury is in court. Have you agreed upon a verdict, Mr. Foreman?

"THE FOREMAN: We have, your Honor.

"THE COURT: You may deliver it to the bailiff, please.

(Verdicts were thereupon handed to the court by the bailiff.)

"THE COURT: In the verdict as to the robbery, the jury did not make a finding as to the degree. Did the jury decide what the degree of the robbery was?

"THE FOREMAN: First degree.

"THE COURT: Is that the agreement of all the jurors? If so, just all raise your hands, so there will be no question. The record will show the jury unanimously have so found. That is as to both defendants, I take it?

"THE FOREMAN: Yes.

"THE COURT: The record will so show. The clerk may read the verdicts returned by the jury.

(The clerk thereupon read the verdicts as returned by the jury.)

"MR. BIRD: The defendant Marlatt will waive the reading of the recorded verdicts as to him.

"THE COURT: You may record the verdicts.

"MR. KOLDA: At this time may I have the jury polled?

"THE COURT: Yes. Counsel has asked to have the jury polled. This may be a new procedure to some of you ladies and gentlemen. The clerk will ask the jurors whether these are their verdicts. If they are, you will answer in the affirmative. Of course, if they are not, you will answer in the negative.

(The clerk thereupon polled the jury.)

"THE CLERK: The jury answers unanimously in the affirmative, your Honor.

"THE COURT: This will conclude your services in this particular case. The clerk may record the verdicts.

(The jury thereupon retired.)"

Appellant's complaint refers only to the verdict rendered in the robbery charge, in which the jury was required to find the degree of the crime, and has no application to the verdict rendered in the count of the information wherein he was charged with a violation of section 503 of the Vehicle Code.

Appellant earnestly urges that when the court observed that the written verdict returned did not find upon the degree of the robbery, it was the court's duty to return the jury to the jury room for further deliberation upon and completion of their verdict, if they were able to agree upon the degree of the offense. In support of his contention, appellant relies upon section 1156 of the Penal Code. But this section applies only to special verdicts. However, if the finding as to the degree be regarded as a special verdict, then in the case at bar, such special verdict was rendered in the alternative method prescribed in section 1153 of the Penal Code. That is, it was in the presence of the jury entered upon the minutes of the court, read aloud to the jury and agreed to by them. ■ If the finding as to the degree of the crime be regarded as part of the general verdict, then the verdict against appellant was rendered in conformity with sections 1149, 1163 and 1164 of the Penal Code. That is to say, as reflected by the record herein, the foreman was asked if the jury had agreed upon a verdict as to the degree of the offense of robbery. He answered in the affirmative. He was then requested to disclose it, which he did. The court then requested the jurors to indicate by a show of hands whether that was their verdict. The show of hands was unanimously in the affirmative. Appellant is in error when he asserts that the jury arrived at their verdict as to the degree of the crime in the courtroom. The foreman declared, and the jurors unanimously affirmed, the declaration that such verdict had theretofore been arrived at in the jury room. Furthermore, at appellant's request, the jury was polled and each juror stated that the foregoing was his or her individual verdict. No possible prejudice could have resulted to appellant's substantial rights by not having the jury returned to the jury room to reduce the verdict to writing.

For the foregoing reasons, the judgments and the order denying appellant's motion for a new trial are, and each is, affirmed.

York, P. J., and Doran, J., concurred.