[Crim. No. 4212. Second Dist., Div. Two. Oct. 5, 1948.]

THE PEOPLE, Respondent, v. SIDNEY HARRIS, Appellant.

William B. Neeley, Public Defender, and J. F. Harvey, Deputy Public Defender, for Appellant.

Fred N. Howser, Attorney General, and James A. Doherty, Deputy Attorney General, for Respondent.

MOORE, P. J.—From a judgment of conviction of robbery in the first degree after verdict appellant seeks a reversal on account of (1) insufficiency of the evidence, (2) allowing the testimony of a witness given at the preliminary hearing

to be read in evidence and (3) comments and questions of the trial judge. While the correctness of the rulings, including the denial of the motion for a new trial, has not been easy to determine, yet a scrutiny of the record and a balancing of the arguments induce the conclusion that a reversal would be error.

On November 12, 1946, the witness Tomp operated a mercantile establishment in the southeastern area of the city of Los Angeles. At the noon hour of that day three Negroes entered the store. One of the trio having asked to purchase a raincoat, Mr. Tomp led them to the section where such merchandise was on display. The first raincoat having been too small, Tomp turned to get one larger, whereupon he was slugged on the back of his head with a gun which caused him to be a "bit groggy" and to lose blood. Then he felt a "big gun" against his body and one man threatened to blow off Tomp's head; another said, "kill him." Tomp saw one robber take money from the cash register, after which they beat him into unconsciousness. On being revived that night at a hospital he discovered that his wrist watch, his wallet and overcoat were gone. On account of the blows on his head he was hospitalized for 12 days and suffered a partial loss of memory. Appellant was duly brought to trial which resulted in the judgment now under review.

### The Proof Sufficient

No question having been raised as to the occurrence of the robbery, the sole problem with reference to the sufficiency of the evidence is to determine that appellant was connected with the crime. Mr. Tomp's testimony has rendered this difficult by reason of his hesitancy at first to identify appellant as one of the robbers and his inefficiency as a witness apparently due to his ignorance of semantics. He distinctly remembered a big wart on the face of one of the men as he greeted them. At the trial appellant was shown to have such a wart. The language of Mr. Tomp which appellant contends is too tenuous to support a finding of appellant's identity as one of the robbers is as follows:

"I think I seen Harris there . . . I think he resembled one of them . . . The wart is similar to the one I saw—He resembles one of these men. . . I remember him. He resembled one of them—He was one of them." Having observed the witness and his behavior, his emphasis and his inflections, the jury were able to determine from his language that he was

sufficiently definite in identifying appellant. While it is true that a mere resemblance is not proof of identity, yet resemblance alone is not relied upon. The victim twice testified: "I am sure he is one of them." The declaration (1) of resemblance and (2) of certainty of identity indicates that the merchant conceived resemblance to be the equivalent of identity. This interpretation of his meaning is borne out by his answer to the question whether at the preliminary examination he testified that Harris "resembled" one of the men "but not quite." His answer was: "Well, not quite. He resembles one of them but not quite." In reply to the question whether that "means you did not recognize Harris," he testified, "I didn't exactly recognize him. I say he resembled him." This indicates that he uses *recognize* when he is *certain* of identity, but uses *resemble* when his identification is less than certain.

Any doubt raised by Tomp's testimony that appellant was one of Tomp's assailants is dispelled by the testimony of the witnesses Long and Darnell. The latter knew Harris intimately and conveyed him and his companions to Tomp's store without knowledge of their purpose. On their return they jumped the back fence of Tomp's place and ran to Darnell's car. Appellant then had a wrist watch not seen before and the others had a rainslicker and a box. They urged him to drive rapidly and he complied. On arriving at Slauson Avenue, an east-west cross-town boulevard, the three men left his machine and boarded an interurban train.

Appellant attacked Darnell's testimony on the grounds that he was prejudiced against Harris and was an accomplice and had been convicted of a felony. Darnell denied the prejudice. The question whether the witness was prejudiced to the extent that he would perjure himself to effect appellant's conviction was one of fact for the jury. They likewise had the task of finding whether Darnell told the truth notwithstanding (1) his felonious character and (2) the claim that he was an accomplice. There is nothing to indicate that Darnell was consciously an accomplice. The jury were justified in finding that he had been an innocent participant in providing the conveyance. At any rate, he was believed by the jury and their finding became final as will hereafter appear. His testimony was of such character as to "create more than a suspicion of guilt," and "it tends to connect the defendant with the offense charged." (*People* v. *Malone,* 82 Cal.App.2d 54, 61 [185 P.2d 870]; Pen. Code, § 1111; *People* v. *Tru-*

*jillo,* 32 Cal.2d 105, 110 [194 P.2d 681].) Clearly, then the testimony of Darnell, who saw appellant enter Tomp's store just before the crime was committed and who witnessed his exit therefrom promptly after the crime in possession of one of Tomp's stolen articles, is, if believed by the jury, sufficient corroboration of the victim's testimony. ▮ A person never sinks so low that he cannot speak the truth sometimes. He may be competent though of degraded character. It is solely for the jury and the trial court to determine whether he speaks the truth. (*People* v. *Cox,* 66 Cal.App. 287, 293 [226 P. 14].)

▮ The witness Long testified that he sat alone in his car on the parking lot in the rear of Tomp's store about 1:45 p. m. of the day of the robbery. He saw the driver in the blue-green car park behind the store. He passed within 2 feet of him, and at the preliminary hearing learned that it was Jimmie Darnell. "Then all at once two or three guys jumped over this fence . . . They jumped in the Darnell car, and boy, he just spun the wheels and got out of there." The actions of the trio were so unusual that Long took the license number of the car and gave it to the police. It is true that Long testified at the preliminary hearing that appellant did not look like one of the accused. He testified also that he "didn't pay that much attention because I was trying to figure why they were jumping over the fence . . . It was raining that day." Though not certain of appellant's identity he would not deny that Harris was one of the three men.

The jury had the testimony of two witnesses that the blue-green car was at the rear of Tomp's store at the noon hour when the merchant says he was robbed; that three Negroes jumped over the fence and entered the automobile; that some of them exhorted Darnell to hasten his departure; that they had articles which had been taken from Tomp. With such corroboration they might well believe the victim's story and his identification of appellant, which was a fact to be determined first by the jury and secondly by the trial judge. (*People* v. *Friday,* 18 Cal.App.2d 197, 198 [63 P.2d 303] ; *People* v. *Quinn,* 12 Cal.App.2d 752, 754 [55 P.2d 277] ; Code Civ. Proc., §§ 1847, 2061.)

▮ It is not required that one accused of crime be identified to an absolute certainty or positively or in a manner free from inconsistencies. If the testimony of the identifying witnesses is worthy of credence and convinces the jury, the lat-

ter's finding is final unless the trial judge should with his intimate knowledge of the witness' behavior upset the verdict. (*People* v. *Slobodion,* 31 Cal.2d 555, 559 [191 P.2d 1]; *People* v. *Farrington,* 213 Cal. 459, 463 [2 P.2d 814]; *People* v. *Houser,* 85 Cal.App.2d 686, 694 [193 P.2d 937]; *People* v. *Friday,* 18 Cal.App.2d 197, 198 [63 P.2d 303].) ▮ It is not essential that the witness be free from doubt as to one's identity. He may testify that in his belief, opinion or judgment the accused is the person who perpetrated the crime. The want of positiveness goes only to the weight of the testimony. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Coston,* 82 Cal.App.2d 23, 30 [185 P.2d 632]; *Commonwealth* v. *Reid,* 123 Pa.Super. 459 [187 A. 263, 266].)

### READING DARNELL'S PREVIOUS TESTIMONY NOT ERROR

▮ Appellant contends that he was grievously prejudiced by the ruling which permitted the testimony of Darnell given at the preliminary hearing to be read in evidence, Darnell being out of the state at the date of the trial. The propriety and validity of such a ruling are by statute vested in the discretion of the trial court. (*People* v. *Dunn,* 29 Cal.2d 654, 660 [177 P.2d 553]; *People* v. *Bernstein,* 70 Cal.App.2d 462, 468 [161 P.2d 381].) Because that court is authorized to exercise such discretion it is not empowered to inquire into the nature of the evidence, the nature of the relations between the accused and the witness or into the character of the latter. The sole test to be applied when an offer of such testimony is made is whether the witness cannot with due diligence be found within the state. If upon the exercise of a reasonable discretion the court determines the fact to be that the witness is beyond the borders of this state, its order allowing the testimony to be read will not be disturbed. ▮ There is no showing of bad faith upon the part of the district attorney. Darnell returned to Texas pursuant to the order of the court below, as a part of his probationary punishment after conviction of a crime. There is no evidence that he was sent there for the purpose of aiding the prosecution and it is presumed that the district attorney did no irregular act for the purpose of accomplishing appellant's conviction. (Code Civ. Proc., § 1963, subd. 15.) The only question presented to the trial court was whether Darnell was at the time of trial in Texas. That fact having been proved to the court "no futile acts of diligence to secure attendance are required." (*People* v. *Guernsey,* 80 Cal.App.2d 463, 467 [180 P.2d 27]; *People*

v. *Padilla,* 81 Cal.App. 528, 532 [254 P. 585]; *People* v. *Caballero,* 41 Cal.App. 146, 151 [182 P. 321]; *People* v. *Flannery,* 3 Cal.App. 41, 44 [84 P. 461].)

 Darnell's previous testimony is attacked upon the further ground that "defense counsel at the preliminary had been improperly denied the right to cross-examine the witness." The only two instances specified by appellant are the following:

(1) "Q. Did the police officers talk to you about this case before you agreed to testify?

"MR. FREDERICKS: Wait a minute. That assumes something not in evidence and we object to it on that ground.

"THE COURT: Objection sustained."

(2) "Q. BY MISS MCDONALD: How long were you held in custody at that time? A. With them men?

"Q. How long after November 15? How long were you held?

"MR. FREDERICKS: I object to that as being immaterial.

"THE COURT: Objection sustained."

Certainly neither objections nor rulings deprived the defendant of the privilege of cross-examination. That the rulings were correct is elemental. The examining magistrate made no order forbidding further inquiry by Harris while Darnell was on the stand.

### THE ALIBI

 Evidence of an alibi was the testimony of Silas Cook and his son Vamious. Both testified that Harris lived at their home and was in bed six weeks; that they saw him every day. The testimony of neither of them is characterized by such accuracy or intelligence as to require its adoption by the jury. Vamious, 19, testified that he had known appellant all his life; that the latter came to the Cook home September 15, 1946; that he stayed there until a date variously described as November 13, November 15 and November 30; that Harris was ill; that the witness and his mother cared for the sick man; he "remembered" that Harris got out of bed the "last part of November"; that he was in bed a month and two weeks. He fixed the events by no incident in the news or by any kind of memorandum. He merely "remembered" them one year later.

Neither had the father any aids to his memory. He testified that Harris came to his home "around November . . . he came in November . . . about November 6th . . . was there

about two months and a half to the 5th of January . . . he was there from September 15 to November 30 . . . and each day I saw him . . . I arrived home at 1:30 a. m., retired at 2, arose at 10:30 . . . I just know he was there; I remember it.'' The jury were not obliged to believe that he just remembered accurately dates or events antedating his testimony by a year. Even though they had believed a portion of it, yet they could reasonably have found that Vamious was mistaken by one day and that according to other evidence appellant was at Tomp's store on November 12. Whatever their reasoning they exercised their prerogative of determining that the alibi was not established.

### No Reversible Error in the Trial, Court's Questions or Comments

Appellant assigns four statements of the trial judge as prejudicial error. (1) The judge assumed to interpret Tomp's meaning by an answer given on cross-examination when he said: ''His testimony is he isn't positive of the man for certain but he resembles him.'' (2) Also, when in the same connection the judge stated: ''He says he doesn't remember whether he saw him there or not. Isn't that right?'' (3) When the probation officer testified that from both the handwriting and the context of the reports someone other than the probationer wrote the reports, the judge asked: ''Is there anything unusual about that? Some of those reports are pretty complicated.'' (4) When defense counsel insisted that the district attorney be required to make his arguments in an opening address the judge stated: ''You have none to answer. The district attorney will only answer your arguments.''

''Mr. Harvey: That is the law but not the fact.

''The Court: It will be the fact in this case, and you ought to know better than to presume to make such a statement. Now proceed.''

With reference to items (1), (2) and (3) the law does not require the judge to maintain a sphinx-like attitude and merely to announce his decision upon mooted points. On the contrary, he must see to it that no factual issue is left in a fog when by proper statement or inquiry the testimony might be made clear. His primary duty is to see that justice is administered, and this cannot under all circumstances be done by silence and inaction in the presence of a controversy. No agency of the law is in so favorable a position as is the trial

judge to know when factual issues need clarification. It therefore becomes his duty to exercise his best judgment to the end that such need is satisfied. (*People* v. *Golsh,* 63 Cal. App. 609, 614 [219 P. 456]; *People* v. *Mendez,* 193 Cal. 39, 46 [223 P. 65]; *People* v. *Miller,* 41 Cal.App.2d 252, 258 [106 P.2d 239].)

With reference to the item (4) which appellant contends indicated a prejudice or an opinion adverse to him, it must be conceded that the language of the judge does appear from the diction used to indicate an impatience with the objection of counsel. In any controversy which must be determined by a jury of laymen who are not familiar with the practice and the zeal of advocates, care should be exercised by the judge at every stage of the proceeding to make no pronouncement or to utter no sentiment that might be construed as an aspersion upon the honor of counsel who is obliged to exert his earnest endeavors to effectuate a just result. Especially should this rule obtain where the facts, as in the instant case, are rendered obscure by contradictory witnesses and by the complainant's inability to express himself in commendable English. However, the statement of the judge in view of the entire record does not appear to have been prejudicial. In making the above comment it is to be observed that the language of counsel was not wholly free from criticism. He appeared to be complaining that he was a victim of an unjust ruling, whereas in fact he had objected to the enforcement of a statute. Counsel should not interpose objections to such a law and thereupon complain that he is the victim of an unauthorized ruling.

But conceding error to obtain in the court's language in all the four assignments, appellant cannot complain of it for the first time on appeal. Counsel's correct course was to except to the ruling or to the language to which he objected and to move to strike from the record any prejudicial remarks of the court and to request that the jury be instructed to disregard them. (*People* v. *Galuppo,* 81 Cal.App. 2d 843, 849 [185 P.2d 335]; *People* v. *Mendez, supra,* 48.) Failing thus to establish his record, in vain will he assail the conduct of the trial judge.

The judgment and the order denying appellant's motion for a new trial are affirmed.

McComb, J., and Wilson, J., concurred.